**Anita AXELROD and Alfred Axelrod, Plaintiffs,**

v.

**INCRES LINE AGENCY, INC., Barber Steamship Lines, Inc., Henriksen Dongfin and Kerr Steamship Co., Inc., and Incres Steamship Co., Ltd., Defendants.**

United States District Court
S. D. New York.

Sept. 2, 1964.

## 150

Goldstein & Sterenfeld, New York City, Harvey Goldstein, New York City, of counsel, for plaintiffs.

Kirlin, Campbell & Keating, New York City, for defendants.

McGOHEY, District Judge.

The defendant Incres Steamship Co., Ltd. moves pursuant to Rule 56(b) of the Federal Rules of Civil Procedure for summary judgment in its favor on the ground that the action against it is time-barred by a provision of the contract of passage which called for the commencement of any action for personal injuries by the ticket holders within one year from the date of injury.

The plaintiffs were passengers on the S.S. NASSAU when, on February 3, 1961, that vessel collided with the M/V BROTT, allegedly owned by the defendants Henriksen Dongfin and Kerr Steamship Co., Inc. The initial complaint, filed on February 3, 1962, alleged a claim of negligence on behalf of Anita Axelrod and also one for loss of services on behalf of her husband against Incres Line Agency, Inc. and Barber Lines as the alleged owners of the "NASSAU," and Kerr Steamship Co., Inc. and Henriksen Dongfin as the alleged owners of the M/V "BROTT." On October 3, 1962, more than one year from the date the claim arose, the plaintiff was granted leave to file an amended complaint naming an additional defendant, Incres Steamship Co., Ltd., as the true owner of the "NASSAU." The plaintiffs consented to the two conditions upon which that motion to amend was granted, namely, that the amended complaint was not to relate back to the time of the filing of the original complaint and that the plaintiffs were not thereafter to argue that it did. The plaintiffs have never sought to be relieved of those conditions. Subsequently, on December 20, 1962, an amended complaint was filed, joining, for the first time, Incres Steamship Co., Ltd. as the owner of the "NASSAU."

It is undisputed that on January 11, 1961, the husband purchased from Rosenbluth Bros. Travel Agency a single ticket, which named both himself and his wife as passengers. There is some question as to whether the wife ever saw the ticket or had it in her possession. For purposes of this motion, it will be deemed, in the light most favorable to the plaintiffs, that she never saw or had possession of the ticket. The issue here as in similar cases is whether the time limitation was part of the passage contract. The defendants contend that the time limitation is an integral part of the contract and thus binds both plaintiffs whether or not they actually read it; and that the action against Incres Steamship Co., Ltd., not having been commenced within one year, is barred. The plaintiffs argue that the limitation is not a part of the contract, and consequently is not binding on them unless they actually read it or had it brought to their attention. Their opposition to the motion rests on two grounds: (1) that because the limitation appears below the signature of the defendant's agent, it is not a part of the contract; (2) that even if it be deemed a part of the contract, the shipowner's attempt to conceal its identity from the plaintiffs should bar assertion of the limitation as an affirmative defense.

A copy of the passage document is before the court. The upper half of its first page consists of a large "box" which is subdivided into several smaller rectangular boxes. The first "box" is headed with the words "INCRES LINE." Immediately below and in the following form appear the words:

"OWNER"

Incres Steamship Company Ltd.

INCRES LINE AGENCY INC.

General Agents for North America
39, Broadway—New York 6, N. Y.

On either side of this heading, near the margin, is the letter "E" in large capitals, and immediately below, in smaller capitals the words "PASSAGE CONTRACT."

The second rectangular "box" or subdivision is headed with the words "FIRST CLASS PASSAGE CONTRACT" in prominent capitals. There follows an introductory statement: "IN CONSIDERATION OF THE PAYMENT TO THE CARRIER OF THE PASSAGE MONEY BY OR ON BEHALF OF THE PASSENGER, THE CARRIER AGREES TO PROVIDE THE TRANSPORTATION DESCRIBED IN THIS PASSAGE CONTRACT AND SUBJECT TO THE TERMS AND CONDITIONS HEREIN PROVIDED FOR, AS FOLLOWS." Below this are spaces containing the names of the places of embarkation and debarkation, the name of the vessel, and the date and time of sailing. Below this, in the third "box," appear the names of the plaintiffs, the price, the name and address of the agent who issued the passage contract and the date of such issuance.

The second half of the first page, constituting the second large "box," begins with the following statement set out in lower capitals: "The contract terms and conditions referred to above, and set forth on this page and the overpage to which the passenger expressly agrees and which are to apply and govern the relations whatever they may be between passenger and the carrier, master and vessel, her officers and crew in every contingency whatsoever and wheresoever occurring and even in the event of or during deviation or unseaworthiness of the vessel at the inception of the voyage or subsequently are as follows: " The remainder of the first page and the overpage consist of some sixteen paragraphs. The one year limitation appears in paragraph 13 of terms and conditions at the bottom third of the second column of the second page.

In The Majestic,[1] the Supreme Court held that a passenger is not bound by "conditions or limitations" appearing on the printed form issued by the carrier unless they are "included in the contract proper, in terms or by reference."[2] In that case the form issued by the carrier contained a large, rectangular box in which appeared the names of the passengers. To the right was a recital of the consideration paid by the passengers and the obligation of carriage to be performed by the carrier. Then followed the agent's signature for the carrier. Below this was written a "NOTICE TO PASSENGERS," followed by a series of limitations among which was a limitation of liability for damage to baggage. The court held that absent some indication above the agent's signature sufficient to incorporate the limitation into the body of the contract, such limitation was not, as a matter of law, a contract term, but a mere notice, and as such not binding on the passenger unless actually read by him or brought to his attention. The doctrine announced in The Majestic was followed by the Court of Appeals for this circuit in Maibrunn v. Hamburg-American S.S. Co.,[3] Bellocchio v. Italia Flotte Riunite Cosulich Line,[4] and The Kungsholm.[5]

1. 166 U.S. 375, 17 S.Ct. 597, 41 L.Ed. 1039.

2. 166 U.S. at 385, 17 S.Ct. at 602.

3. 2 Cir., 77 F.2d 304.

4. 2 Cir., 84 F.2d 975.

5. 2 Cir., 86 F.2d 703.

In Maibrunn, there appeared on the face of the ticket the following legend: "Notice. The attention of the passengers is especially directed to the terms and provisions of this contract printed on the reverse side * * *." On the reverse side was a provision which required a written notice of claim by the passenger within sixty days after termination of the voyage. In holding that this limitation was not incorporated into the contract proper, Judge Learned Hand wrote: "[O]nly the contract proper charges the passenger, and the contract is taken as those words which the carrier in some way authenticates by its own signature; notices and legends alongside are not part of it." [6] Similarly, in the Bellochio case, a provision on the back of the ticket required the passenger to give notice of any claim for injuries within thirty days of the ship's arrival. The court held that the plaintiff's failure to give such notice would not bar her action since it was not a part of the contract. Judge Learned Hand wrote: "The ticket was signed and dated by the company's travel agent at the bottom. It was headed with the name of the line and its place of business in New York; it recited that it was a second class ticket from New York to Naples on the Steamer 'Rex' * * * The name of the passenger was filled in, the cabin and berth, and the price, together with the United States and port taxes. This was all * * *. Nothing on the face of the ticket called attention to the back." [7]

In The Kungsholm, the court reached a similar result. There the "box," covering only a part of the face of the ticket, contained the name of the passenger, the price of passage, the accommodations he was to occupy, the name of the vessel, the itinerary and the date of sailing. This was followed by the carrier's name and the stamped signature of its agent. The court held that only what appeared in the "box" above the agent's signature constituted the contract of transportation "unless the passenger had knowledge of the printed condition." To the right of the "box" were the words "Cruise Contract" and "The following stipulations are a part of this contract * * *." The court found nothing, however, above the agent's signature to incorporate expressly or by reference these conditions into the contract proper. It is clear that if there is to be any incorporation by reference, such reference must occur in the body of the contract, that is, above the agent's signature.

In Baron v. Compagnie Generale Transatlantique,[8] the court held that a time limitation was textually a part of the body of the contract. Finding that "[T]he signature or authentication of the carrier appears at the foot of the 'Terms and Stipulations' and at no other place," the court distinguished The Kungsholm on the ground that in the latter the agent's signature appeared above the "Terms and Stipulations."

Foster v. Cunard White Star,[9] held that "a direct reference in the box on the face of the ticket to the terms and conditions of the contract" was sufficient to incorporate such terms and conditions into the contract proper, even though the conditions were set out beneath the carrier's signature. Foster was a per curiam opinion, and the court did not specify the language in the contract proper which it held to be a "direct reference" to the limitations. Similarly, Geller v. Holland American Line,[10] held that the time limitation was incorporated by reference into the body of the contract and therefore precluded the plaintiff from suit. Again, however, the court failed to indicate what was the precise language of incorporation.

An examination of the passage contract in the present case compels the

---

6. 77 F.2d at 306.

7. 84 F.2d at 976.

8. 2 Cir., 108 F.2d 21.

9. 2 Cir., 121 F.2d 12, 13.

10. 2 Cir., 298 F.2d 618.

conclusion that the time limitation was effectively incorporated by reference into the contract proper which occupied the space above the travel agent's signature. Reference to such limitation is found in the box itself, above the agent's authentication, in the following words: "The carrier agrees to provide the transportation described in this passage contract * * * *subject to the contract terms and conditions herein provided for, as follows:"* [emphasis supplied] This statement is unequivocal. There are no "terms or conditions" appearing explicitly above the agent's signature. Hence the phrase "terms and conditions" appearing in the box can have no meaning unless it refers to those terms which immediately follow the agent's signature.

The plaintiffs suggest somewhat obliquely that service on Incres Line Agency should be deemed to be timely service on Incres Steamship Co. because Incres Line deliberately concealed its identity as owner of the "NASSAU" and because "notice to one was certainly notice to the other." There is no evidence of any deliberate misrepresentation on the part of either Incres Line Agency or Incres Steamship Co. The plaintiffs claim to have been mislead solely because of what they allege to be ambiguity on the letterheads of the passage contract and the various communications they received from Incres Line Agency. Even assuming the letterheads were ambiguous as to the actual ownership of the "NASSAU," this does not constitute a sufficient basis for holding service upon an improper party to be service upon the proper one. No basis has been shown for disregarding the separate corporate identities of Incres Line Agency and Incres Steamship Co., Ltd.

Nor can it be argued, as the plaintiffs suggest, that Incres Steamship Co. was under an obligation to volunteer information to the plaintiffs concerning its ownership of the vessel or else be deemed to have waived the time limitation provided for by the ticket contract. The plaintiffs have proffered no case so holding, nor has the writer been able to discover one. Armit v. Loveland,[11] is wholly different on its facts from the present situation. There, jurisdiction was timely acquired over all three defendants, and there was no question about proper service on any of the three.

The plaintiffs' final point, that Incres Line Agency should be deemed a party to the contract because it was acting for an undisclosed principal, is not necessary or relevant to the disposition of this motion.

The motion of Incres Steamship Co., Ltd. for summary judgment dismissing the amended complaint against it is granted.

So ordered.